The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR09-160JLR |
| Plaintiff, | |
| v. | UNITED STATES' SENTENCING MEMORANDUM |
| HUMBERTO REYES-RODRIGUEZ, | |
| Defendant. | Sentencing Date: June 14, 2010 |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, Sarah Y. Vogel, Assistant United States Attorney, files this Sentencing Memorandum in anticipation of the upcoming sentencing hearing for Defendant Humberto Reyes-Rodriguez, a/k/a Tony Reyes, scheduled for Monday, June 14, 2010.

## BACKGROUND

### *Overview - The Scheme to Defraud*

Beginning at least by November of 2005, and continuing through February of 2009, Humberto Reyes-Rodriguez, who also went by the name Tony Reyes (hereinafter "Reyes"), William S. Poff, Alexis Ikilikyan, Micki S. Thompson, and others, participated in a scheme to obtain money from lenders through the purchase and sale of real property.

Specifically, the participants schemed to defraud financial institutions and other lenders by, among other things: (a) locating residential real properties that were available for purchase and purchasing them, often using straw buyers; (b) orchestrating subsequent sales and purchases of the same properties to other members of the conspiracy or straw buyers; (c) falsely inflating the value of the properties; (d) submitting false and fraudulent mortgage loan applications, title documentation, and related documents to financial institutions and other lenders, thereby causing lenders to make loans the otherwise would not have; (e) creating false and fraudulent documents intended to conceal the diversion of loan proceeds to the defendants; (f) obtaining commissions and fees from the completed transactions; and (g) diverting fraud proceeds for their personal use and benefit, and to further the fraud scheme.

It was part of the scheme that Reyes, Ikilikyan, and Poff located residential properties available for purchase and recruited individuals to act as buyers of the located properties. These individuals would allow their identities and credit to be used to purchase the properties. In most cases, these "straw buyers" had no intention of permanently owning or occupying the properties.

Using escrow services provided by Thompson at Great American Escrow, members of the scheme created false HUD-1 Settlement Statements. These HUD-1s concealed the true details of the underlying purchase and sale transaction from the lenders and, in some instances, the sellers. The false and fraudulent HUD-1s also facilitated the diversion of a significant portion of the loan proceeds from escrow accounts for the participants' personal benefit. In particular, the false HUD-1s often reported fictitious payments from escrow to equally fictitious repair and construction companies, for work that was never performed.

One of these fictitious repair companies was *Marroquin Handyman Services*, purportedly owned by co-defendant Mario A. Marroquin. Members of the scheme also used *Marroquin Handyman Services* as a fictitious employer for false and inflated

income claims on Loan Applications submitted to lenders in the names of straw buyers, including co-defendant Marroquin, his wife, and others.

***Reyes's Admitted Offense Conduct*[1]**

Beginning at least by November of 2005, and continuing through February of 2009, Reyes, knowingly and intentionally schemed to obtain money from one or more lenders through the purchase and sale of real property. During this period, Reyes was a licensed real estate agent in the State of Washington, and also worked as a mortgage loan originator.

In furtherance of the scheme, in March of 2007, Reyes's co-defendants Ikilikyan and Poff purchased 7038 S. Puget Sound Ave., Tacoma, for $100,000. In August of 2008, Reyes purchased this property from Ikilikyan using L.H. as the buyer, for $160,000. Reyes acted as L.H.'s real estate agent, and helped to obtain a loan from Golf Savings Bank for $157,916 to fund the purchase. Reyes is listed as the buyer's realtor on the purchase documents and agent disclosure forms, and he was paid (and deposited into his bank account) the buyer's real estate agent commission for the transaction. The loan officer at Golf Savings Bank worked exclusively with Reyes on the transaction, and never met L.H..

The loan application submitted to Golf Savings Bank falsely claimed that L.H. was a United States citizen and falsely claimed that he intended to purchase the property as his primary residence. Primary residency is one of the most important factors lenders rely upon when evaluating borrower qualifications, since people are considered significantly less likely to default on payments for their own home. The application also falsely represented that L.H. was employed by *International Painting*, earning over $5,000 per month. Reyes knowingly prepared false supporting documents to be submitted along with this application.

Before funding the loan, Golf Savings Bank required verifications of L.H.'s bank accounts, employment, and income. In the lender's file is a "Verification of

---

[1]Taken from the factual admission in the plea agreement.

Employment," purportedly completed by the manager-owner of *International Painting*. It "verified" that L.H. was employed full-time by that company, and earned $5,200 per month as a "manager-field supervisor." In addition, the lender file includes computer-generated paystubs for L.H. from *International Painting* for May through July of 2008. In truth, L.H. was not employed by *International Painting*, and did not ever claim to be. He did not receive payroll payments from such a company. Reyes assisted in the submission of these false documents to the lender and knew they were not truthful. Reyes asked the owner of *International Painting* to falsely "verify" that L.H. was employed there, which he did. These same forged paystubs were found in Reyes's home computer, attached to an email.

On or about August 14, 2008, in reliance upon these false statements and fake documents, Golf Savings Bank, which was an FDIC insured institution at that time, transmitted $157,916 to a Key Bank account owned by GAE to fund L.H.'s purchase of this property. GAE bank records reveal that after this purchase closed, GAE wired $35,000 of the loan proceeds to the Bank of America account of Reyes's girlfriend/wife, some of which eventually was transferred to Reyes. Reyes also received $4,122.96 in commissions from Dove Realty for this transaction, which he deposited into his WaMu account. Bank records show that the remainder of the proceeds (approximately $100,000) were split between Ikilikyan and Poff and wired to their respective accounts.

Loan records establish that just six months later, this purchase loan was refinanced to obtain a better interest rate (no cash out). All of the loan documents and false verifications for the refinance were found on Reyes's home computer.

### **REYES's GUILTY PLEA**

Reyes timely entered a guilty plea to Bank Fraud, as charged in Count 9 of the First Superseding Indictment, in violation of Title 18, United States Code, Sections 1344 and 2. Dkt. 130 ("Plea Agr."). In the Plea Agreement, the parties entered into the following Guidelines Stipulations:

a.   An initial base offense level of 7, pursuant to USSG § 2B1.1(a)(1);

        b.      An increase of 14 levels pursuant to USSG § 2B1.1(b)(1)(H), corresponding to a total loss for all transactions committed as part of this common scheme of more than $400,000, but less than $1,000,000;

        c.      Full credit for acceptance of responsibility, subject to the conditions outlined in the paragraph entitled <u>Acceptance of Responsibility</u>, below.

The parties agree they are free to argue the application of any other provisions of the United States Sentencing Guidelines. In connection with any argument regarding application of other Guidelines provisions, the parties agree they are not limited to just those facts included above. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

Plea Agr. ¶ 8.

The parties further agreed:

    <u>Sentencing Recommendation</u>. The United States agrees to recommend a term of imprisonment no higher than 57 months. There is no limitation on the United States' recommendations as to restitution, supervised release, or fines.

Plea Agr. ¶ 9.

## GUIDELINES CALCULATION

The Presentence Report[2] ("PSR") accurately describes Reyes's criminal conduct and history, but only includes a small fraction of Reyes's conduct related to the fraud scheme. In particular, the United States objects to the statement in the Final PSR ¶ 24 (which was not in the draft version) that "the investigation, to date, has only specifically identified two additional properties with which Reyes-Rodriguez was involved and a documented loss was sustained." This is simply incorrect, as there have been documented

---

[2] Final, dated June 7, 2010.

losses on many more properties and involving many more victims as part of this scheme, but they were not included in detail in Reyes's PSR because the parties already had stipulated to a loss amount (although many are documented in co-defendant and co-schemer Poff's PSR).

The PSR correctly assesses upward adjustments for aggravating role in the offense, and abuse of a position of trust. PSR ¶¶ 40-41. Reyes recruited, managed, supervised, and directed co-conspirator Mario Marroquin for over a year as Marroquin facilitated Reyes's scheme by laundering money through the fictitious *Marroquin Handyman* bank account. PSR ¶ 14, ¶ 18. Reyes also recruited and supervised L.H., the straw buyer involved in the offense underlying the count of conviction. PSR ¶¶ 19-22. The PSR accurately awards Reyes full credit for acceptance of responsibility. PSR ¶ 44.

The United States does not object to the total offense level as calculated by Probation of 22 and the Criminal History category is I, resulting in a Guidelines range of 41 to 51 months' imprisonment.

## STATUTORY MAXIMUM

The statutory maximum penalty is imprisonment for up to 30 years, a fine of up to $1,000,000, or both imprisonment and a fine, a period of supervision following release from prison of up to 5 years, and a $100 special assessment. 18 U.S.C. § 1344.

## SENTENCING RECOMMENDATION

A. *Analysis of Statutory Factors*

Title 18, United States Code, Section 3553(a), provides that the court shall consider several enumerated factors when determining a sentence. With respect to the nature of the offense under section 3553(a) factor one, Reyes's fraud scheme was serious, ongoing over a period of years, and was very successful. Reyes caused extensive harm to both private and commercial lenders that were defrauded. Defendant also involved numerous other members of his own immigrant community in his scheme, persuading or conning them into allowing him to use their (once) good credit to further Reyes' illegal goals. These others included co-defendant Marroquin, his wife, and the buyer of 7038 S.

Puget Sound, L.H., all of whom ultimately have suffered significantly from their association with Reyes. Reyes's motivation for recruiting these individuals appears to have been pure avarice, particularly toward the end as the scheme was unraveling and he needed new buyers with good credit to allow him to get more cash from closing just to meet his previous financial obligations.

Reyes's conduct, in conjunction with that of his co-schemers, including Ikilikyan, Poff, Thompson, and others, left a tragic trail of foreclosures and ruined credit in its wake, but provided Reyes with a steady stream of income for several years. In fact, the only reason the fraud scheme stopped was the ultimate collapse of the mortgage industry.

With respect to section 3553(a) factor two, that is, the history and characteristics of the defendant, the United States submits that Reyes has had every opportunity to live a lawful life in the United States. He has a college education, speaks fluent Spanish and English, and was granted legal asylum in the United States to avoid political persecution in his native country of El Salvador. He is clearly intelligent, capable, and a proficient computer user. He has no criminal convictions, but two arrests. It appears that his criminal conduct started when he began to earn significant commissions from real estate transactions and was living a lavish lifestyle that, without committing fraud, he could not afford.

Factors three, four, and five of section 3553(a) provide that the sentence should result in just punishment while promoting respect for the law, ensuring the safety of the public, and deterring similar crimes. There is a significant need here to promote respect for the law, and to deter those who would commit fraud against financial institutions, particularly when those persons are professionally licensed in the field and are exploiting their "clients" for personal gain. Given Reyes's limited willingness to accept and admit what was overwhelmingly clear criminal conduct involving other real estate transactions, the United States respectfully suggests that without significant punishment and continuing monitoring, Reyes remains a threat to re-offend in a similar manner (although, not in the real estate field in Washington, as his license has been revoked).

With respect to factors six and seven of section 3553(a), there is no indication that Reyes needs special medical care or treatment.

Factor eight directs the Court to avoid unwarranted disparity among similarly situated defendants. In this case a peripheral participant in one aspect of the money laundering supporting the fraud scheme, Mario Marroquin, received a sentence of probation, representing a significant departure for his cooperation. The other cooperating defendants Ikilikyan and Thompson are facing expected Guidelines ranges roughly the same as Reyes's, but then they are likely to receive reductions for substantial assistance. Poff, who has not accepted any responsibility, is facing the longest Guidelines range starting at approximately 135 months. Based on these preliminary figures, it would appear that a sentence of 57 months' imprisonment for Reyes, who did accept responsibility and enter a guilty plea, but did not cooperate, is not disparate.

Finally, with regard to sentencing factor nine, as outlined below, restitution is mandatory, and a lengthy term of supervised release following prison will permit the best chance of recovering any restitution for the victims of this crime.

In summary, the United States respectfully suggests that analysis of the several statutory factors in this case supports a sentence within the advisory Guidelines range.

**B. Specific Sentencing Recommendation**

The United States requests that the Court impose a sentence in the middle of the Guidelines range, of 51 months' imprisonment. The United States respectfully suggests that, for the reasons discussed above, this sentence is "sufficient, but not greater than necessary" to comply with statutory sentencing purposes. 18 U.S.C. §§ 3553(a).

### RESTITUTION

The Mandatory Victims Restitution Act ("MVRA") imposes mandatory restitution for crimes committed by fraud or deceit. 18 U.S.C. §3663A(c)(1)(A)(ii). In recognition of this statutory obligation, Reyes stipulated:

> Restitution. Defendant shall make restitution to all victims in the full amount of their losses, as determined by the Court at the time of sentencing, with credit for any amounts already paid. Said amount shall be due and payable immediately and shall be paid in accordance with a schedule of

    payments as proposed by the United States Probation Office and ordered by the Court.

Plea Agr. ¶ 11.

The task before this Court now is determining "the full amount of each victim's losses . . . without consideration of the economic circumstances of the defendant." 18 U.S.C. §3664(f)(1)(A). The initial step in determining restitution is identifying the victims. The term "victim" is defined broadly to include:

> person[s] directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern...

18 U.S.C. §3663A(a)(2). Based on this definition, the government has identified two groups of victims. The first includes the lenders and loan servicing companies presently holding, or responsible for servicing, the fraudulently obtained mortgages. The second group includes individual sellers who were induced through fraud to extend private loans as part of the real estate transaction. A third group of potential victims includes the former friends and clients of Reyes's whom he persuaded to allow their names and credit histories to be used to purchase properties. Those individuals have suffered significant, but difficult to quantify, harm in the form of financial stress and ruined credit that cannot be restored through an Order of restitution.

Attached to this Memorandum as Exhibit A is a chart summarizing known victims' losses attributable to Reyes.[3] This chart does not attempt to include the third category of victims. It includes losses incurred by victims associated with only three of the dozens of properties Reyes was involved in buying or selling as part of the scheme: (1) 7038 S. Puget Sound, Tacoma, WA, which was the subject of the count of conviction; (2) 27419 8th Ave S., Des Moines, which was purchased jointly by Poff, Ikilikyan, and Reyes from

---

[3] The United States has agreed to apportion restitution. *See* 18 U.S.C. § 3664(h)("the court...may apportion liability among the defendants to reflect the level of contribution to the victim's losses and economic circumstances of each defendant").

1 the Kirkdoffers, and thereafter was occupied by Reyes; and (3) 116 Homer Ave, Pacific,
2 WA, which was purchased by Marroquin's wife as a straw buyer for Reyes (using the
3 same false information about *Marroquin Handyman*) from the Backmans.  Both the
4 Kirkdoffers and the Backmans have submitted loss statements and claims for restitution,
5 as have the lien-holders for 27419 8th Ave S (GMAC and BECU).  The loss estimated for
6 the final owner of the mortgage on 116 Homer Ave., is based on information from
7 recorded county deeds, including a Trustee's Deed that recorded a foreclosure sale price
8 that was $87,500 less than the principal amount of the loan.  All of the documents
9 supporting these restitution figures have been provided to Defendant and Probation.

10     The total amount of restitution that Reyes should be ordered to pay is
11 $1,237,839.95.  The Court should order that Reyes pay restitution associated with
12 27419 8th Ave SE, Des Moines, WA (Kirkdoffers) jointly and severally with Ikilikyan
13 and Poff and Thompson, who were jointly responsible with Reyes for these losses.  The
14 remainder of the restitution should be ordered paid solely.

15     The Court properly should include losses to each of the victims listed on the
16 attached restitution chart, despite the fact that Reyes's single count of conviction detailed
17 only one of the three transactions, because all of these losses were caused by Defendant
18 Reyes as part of the same scheme to defraud.  *See United States v. Bright*, 353 F.3d 1114,
19 1120 (9th Cir. 2004) (holding that the MVRA authorizes restitution for losses caused by
20 related conduct that is part of a fraud scheme, even where the conduct was alleged in
21 charges that subsequently were dismissed).  *See also United States v. Booth*, 309 F.3d
22 566, 576 (9th Cir. 2004) (restitution may be ordered for all persons harmed by the entire
23 scheme); *United States v. Grice*, 319 F.3d 1174, 1177 (9th Cir. 2003) (affirming
24 restitution for losses incurred from "related but uncharged conduct that is part of a mail
25 fraud scheme").

26                             **FINES, FEES & FORFEITURE**

27     Given the restitution owing in this case, Reyes does not appear to be able to pay a
28 fine, but he is responsible for the mandatory Special Assessment of $100.  There is no

forfeiture pending.

## DISMISSAL OF REMAINING COUNTS

Following imposition of sentence, pursuant to the Plea Agreement, the United States will move for dismissal of all remaining counts in the First Superseding Indictment as to this defendant.  Plea Agr. ¶ 13.

## WAIVER OF APPEAL

As part of the Plea Agreement and "on the condition that the Court imposes a custodial sentence that is at or below 57 months' imprisonment," Defendant has waived many of his appeal rights.  Plea Agr. ¶ 14.  The United States respectfully requests that the Court so advise Defendant following imposition of sentence.

## REMAND FOLLOWING SENTENCING

The Defendant should be remanded at the time of sentencing.  Once a defendant has been convicted at trial, the law establishes a presumption in favor of detention. *See* 18 U.S.C. § 3143(a); *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 26 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3209 ("Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal.").  Specifically, as relevant to this case, 18 U.S.C. § 3143(a) provides that

> the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

Thus, to secure release on bail after a guilty verdict, a defendant must rebut this presumption with clear and convincing evidence that he is not a risk of flight or a danger to any person or the community.  *United States v. Abuhamra,* 389 F.3d 309, 319 (2d Cir. 2004).

In this case, Defendant Reyes has been convicted of committing bank fraud, a serious felony. He is facing the possibility of a lengthy term of imprisonment.  He is not a citizen of the United States, and given his temporary legal status, faces likely removal

1  from the United States while in custody.  He has relatives in El Salvador, and essentially
2  no incentive to surrender for service of this sentence.
3      Defendant has failed to rebut the presumption favoring detention following
4  conviction with clear and convincing evidence that he is not a risk of flight or a danger to
5  any person or the community.  The United States respectfully suggests that there is no
6  reason why the presumption should not be applied and Defendant Reyes detained
7  following sentencing.
8      DATED this 8th day of June, 2010.
9      Respectfully submitted,
10     JENNY A. DURKAN
       United States Attorney
11
12     *s/ Sarah Y. Vogel*
       SARAH Y. VOGEL
       Washington State Bar No. 35966
13     Assistant United States Attorney
       700 Stewart Street, Suite 5220
14     Seattle, Washington 98101-1271
       Phone:  (206) 553-2074
15     Fax:    (206) 553-4440
       Email: Sarah.Vogel@usdoj.gov
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES' SENTENCING MEMORANDUM - 12
*U.S. v. Humberto Reyes-Rodriguez*; CR09-160JLR

CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2010 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

*s/Karen Wolgamuth*
KAREN WOLGAMUTH
Paralegal
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-5050
FAX:   (206) 553-4440
E-mail: karen.wolgamuth@usdoj.gov